UNITED STATES of America,
Plaintiff-Appellee,

v.

James E. DOYLE, Defendant-Appellant.

No. 85–3015.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1985.

Decided April 15, 1986.

Christopher Nuechterlein, Washington, D.C., for plaintiff-appellee.

Allan K. Butcher, Tom E. Hill, Zachry, Kearney, Hill, Shaw, Beatty & Butcher, Fort Worth, Tex., for defendant-appellant.

Before WRIGHT and REINHARDT, Circuit Judges, and SOLOMON,[*] District Judge.

SOLOMON, District Judge:

## FACTS

James E. Doyle, appellant, was convicted on two counts for the illegal purchase and transportation of an endangered species. We affirm in part and reverse in part.

Doyle is a physician who lives in Texas. He is interested in birds and runs a bird rehabilitation center. He breeds captive falcons, hoping to reintroduce them into areas in Texas where the native falcon population has drastically declined. Doyle's attempt to acquire wild falcons resulted in his prosecution.

Doyle was tried with co-defendants, Burt Loessberg, a falconer, and Greg Moore, a veterinarian. In 1982, Loessberg met and befriended John McPartlin, the government's confidential informant. In 1984, Loessberg told McPartlin that Moore and Doyle wanted to purchase peregrine falcons. Loessberg acted as an intermediary between Doyle and McPartlin to acquire them. McPartlin told Loessberg that he would obtain illegal wild anatum peregrine falcons for Doyle and Moore. McPartlin explained that he would mark the wild birds with a yellow federal band to falsely indicate that they were hatched in his captive breeding program. McPartlin repeatedly informed Loessberg that he must make Doyle aware of the illegality of the operation.

In May, 1984, McPartlin spoke directly with Doyle for the first time. Doyle acknowledged that he was aware that there were problems with the parentage of the birds. McPartlin told Doyle the details of the scheme. He also reminded Doyle that the sale of wild falcons is illegal in Montana. Doyle and Moore spoke to McPartlin several times during the following month to arrange the details of the purchase. McPartlin obtained the necessary Montana raptor export permits.

On June 2, 1984, Doyle flew from Texas to Montana to purchase the falcons. McPartlin and an undercover agent of the United States Fish and Wildlife Service, posing as McPartlin's accomplice, showed Doyle the birds. McPartlin again reminded Doyle that the scheme was illegal. Doyle paid in cash for two birds, one for himself and one for Moore. Doyle was arrested at his home several weeks later.

Doyle, Loessberg, and Moore were indicted for conspiracy to violate the Lacey Act. Doyle and Moore were indicted on two additional counts for violating the Lacey Act[1] and the Endangered Species Act.[2]

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B).

2. 16 U.S.C. §§ 1538(a)(1)(E) and 1540(b)(1).

At the trial, the government relied primarily on recorded telephone conversations between McPartlin and the defendants to establish its case. Parts of several recordings were played to the jury. All nine of the tapes played by the government were admitted in evidence, and five tapes introduced by Doyle's co-defendants were also admitted. The co-defendants also played parts of three other tapes to refresh McPartlin's recollection, but these three tapes were not offered in evidence. The jury acquitted Loessberg, Moore, and Doyle on count 1 and convicted only Doyle on counts II and III. Doyle appeals.

Doyle raises several issues on appeal. He asserts that: 1) the court reporter's failure to record the content of tapes played at trial requires a reversal; 2) the Montana statute, Mont.Code Ann. §§ 87–5–203 and 87–5–206(4), which is the basis of the Lacey Act violations is unconstitutionally vague; 3) there was insufficient evidence that Doyle knew that his possession and transportation of the falcons were unlawful under Montana law; 4) the court erred in a supplemental jury instruction on the legality of trapping anatum peregrine falcons; 5) there is insufficient evidence that the falcons bought and transported were anatum peregrine falcons; 6) the Endangered Species Act, 16 U.S.C. § 1538, is unconstitutionally vague; 7) there is insufficient evidence that the falcons were transported in the course of commercial activity; and 8) the court improperly instructed the jury on commercial activity.

### 1. *Tapes*

■ Several tapes of conversations between McPartlin and the co-defendants were played at the trial. The court reporter did not record the contents of the tapes. Doyle argues that 28 U.S.C. § 753(b) requires a court reporter to record verbatim "all proceedings in criminal cases had in open court." He contends that failure to record the played tapes is reversible error.

Fourteen tapes were admitted in evidence. Doyle asserts that without knowing which portions of these tapes were played at trial, this court cannot adequately evaluate his claim that there was insufficient evidence to convict. We disagree. These tapes were taken into the jury room, where the jury had the opportunity to listen to all or any portion of each tape because each was admitted in evidence in its entirety. We presume that the jury considered all available evidence in its deliberations. Moreover, because the tapes are available to this court as part of the record on appeal, the failure to record the portions played at trial does not prevent our determining the contents of the tapes.

■ Court reporters are required to record proceedings verbatim, 28 U.S.C. § 753(b), but the failure to do so does not require a per se rule of reversal. *See United States v. Piascik*, 559 F.2d 545, 548 (9th Cir.1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978).

■ Parts of three additional tapes were played to the jury, but neither was admitted nor offered in evidence.[3] Doyle asserts he was prejudiced by the failure to record the portions of these tapes played at the trial, but does not explain in what respect the tapes were prejudicial.[4] Again it appears from his brief that his only argument is that we are precluded from examining the entire record and therefore cannot determine whether the evidence was sufficient to sustain the conviction. Doyle is plainly wrong for two reasons. One, he, himself, argues that the three tapes do not constitute evidence. Two, these tapes were used by the government as part of its presentation. They contain material adverse to Doyle. Doyle has not been harmed by their omission from the record.

### 2. *The Lacey Act Violation*

Under the Lacey Act, 16 U.S.C. § 3372(a)(2), it is unlawful for any person

---

**3.** Doyle made no effort to comply with Rule 10(c) of the Federal Rules of Appellate Procedure which gave him a means of presenting the contents of these tapes before this court.

**4.** That the tapes were not admitted in evidence did not prevent Doyle from listening to them, discovering the most damaging portions, and then pointing out how he might have been prejudiced.

to transport, sell, receive, acquire, or purchase in interstate commerce any wildlife taken, possessed, transported, or sold in violation of any state law. Under Montana law, it is unlawful to purchase, possess, or transport a raptor[5] without a certificate, license, or permit issued by the Montana Department of Fish, Wildlife, and Parks. Mont.Code Ann. §§ 87–5–201, 87–5–203, and 87–5–206(4). Doyle was convicted of violating the Lacey Act on the basis of these Montana statutes.

### a) *Vagueness of the Montana Code provisions.*

■ Doyle asserts that Montana Code Annotated sections 87–5–203 and 87–5–206(4) do not give a person of ordinary intelligence fair notice of what conduct is forbidden. Doyle apparently asserts that the statute does not clearly prohibit a person who has a permit from transporting falcons even when the permit is fraudulently obtained.

Doyle's argument has no merit. Under the Montana statutes, the illegal act must be committed knowingly in order to constitute a violation. This scienter requirement is sufficient to withstand any vagueness challenge. *See Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 342, 72 S.Ct. 329, 331–332, 96 L.Ed. 367 (1952). Doyle's permit purported to cover birds bred and raised in captivity, but there is substantial evidence that Doyle knew these were wild falcons and that the permits were based on information he knew to be false. Doyle cannot escape the false representations made to obtain the permit. His vagueness challenge must fail.

### b) *Sufficiency of the evidence of Doyle's knowledge.*

■ To determine whether there is sufficient evidence to support a guilty verdict, this court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

Doyle argues that there is no evidence that he knew the falcons were "possessed and transported" in violation of Montana law. He argues that he had permits issued by the proper state agency and that these permits authorized possession and transfer of the falcons they described,[6] so the possession and transfer could not be unlawful.

Again Doyle's argument has no merit. It is true that the permits described the falcons that were transported, but Doyle knew that the origin of these falcons had been misrepresented. McPartlin told Doyle on the telephone that the transaction was illegal under Montana law and described to him how he was going to "cover" the transaction. Doyle participated in this cover. McPartlin again reminded Doyle of the illegality of the transaction when Doyle received the falcons in Montana.

Doyle was fully aware that the falcons he was transporting were not captive bred. The jury had a rational basis to reject his argument.

### c) *Supplemental jury instruction.*

■ Doyle contends that the district court's response to a jury question during deliberation was inaccurate and requires reversal. The jury asked: "Can the anatum peregrine falcon be trapped legally for use in falconry?"[7] The court answered, "No." Although there may be some ambiguity in the Montana law, (*but see* Mont. Code Ann. § 87–5–205(1)) the federal regulations are clear. Anatum peregrine falcons are an endangered species and may not be trapped for falconry. *See* 50 C.F.R. §§ 21.28(e)(3) and 21.29(e)(1)(iv).

Even if this instruction considered in isolation might be unclear, we must consider

---

**5.** A raptor is a bird of prey, such as falcons, hawks, eagles, ospreys, and owls.

**6.** The numbers on the falcons' leg bands matched the numbers on the Montana permits.

**7.** Falconry is the art of training falcons to pursue game or the sport of hunting with falcons. *Webster's Seventh New Collegiate Dictionary* 300 (1963).

the jury instructions as a whole. *See United States v. Green,* 745 F.2d 1205, 1209 (9th Cir.1984), *cert. denied,* — U.S. —, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985). When so considered, there is no ambiguity and no abuse of discretion. Here again, even if there was error, it was harmless.

### 3. *Endangered Species Act*

a) *Sufficiency of the evidence that the falcons were anatum peregrine falcons.*

The Endangered Species Act, 16 U.S.C. § 1538(a)(1), provides: "with respect to any endangered species of fish or wildlife ... it is unlawful for any person subject to the jurisdiction of the United States to ... deliver, receive, carry, transport, or ship in interstate or foreign commerce ... any such species." It is undisputed that an anatum peregrine falcon is such an endangered species. *See* 50 C.F.R. § 17.11(h) at 73.

To convict Doyle, the government must prove beyond a reasonable doubt that the falcons which Doyle transported were anatum peregrine falcons (*falco peregrinus anatum*). Doyle contends that there is no credible evidence to show that the falcons were anatum peregrine falcons. We agree.

The government relied primarily on the testimony of McPartlin. He identified the falcons from memory, and through photographs, as anatum peregrine falcons. When asked how he knew the nestling falcon (newborn) was an anatum peregrine, he replied, "I base that on the fact that that is the only subspecies of peregrine falcon that nests within the state from which that bird came in the wild state." He conceded that he could not conclusively make the identification on the bird's features. McPartlin also testified to the identity of the other bird, the immature falcon, by the location where it was trapped.

 The government may establish the identity of an object through circumstantial evidence, *United States v. Sanchez,* 722 F.2d 1501, 1506 (11th Cir.), *cert. denied,* 104 S.Ct. 2396, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984), but here the circumstantial evidence was based on hearsay and should not have been admitted. McPartlin had no first-hand knowledge of the falcons' origins. He was told by other government agents where the falcons had been trapped. This evidence is suspect because the man who allegedly trapped the nestling falcon was available, but the government elected not to call him. At the time of trial, the government also had possession of the falcons which they had seized. Because of the age of the falcons, the government was in a position to make a positive identification. The government elected not to do it.

The government argues that McPartlin's identification of the immature bird was on the basis of its characteristics in addition to its place of origin. McPartlin's identification was contradicted by other evidence in the record. The physical features which McPartlin described were not sufficient to justify his conclusion, particularly when the government failed to bring in other available evidence which would have positively established the species of the falcons.

 Because we find that there was insufficient evidence to identify the falcon as an endangered anatum peregrine falcon, we need not reach the other issues raised by Doyle under the Endangered Species Act. In addition, because we reverse on count III, the Endangered Species Act count, involving the need to identify a specific subspecies, we find it unnecessary to dispose of appellee's motion to strike material attached to appellant's reply brief.

We AFFIRM the judgment of conviction on count II, the violation of the Lacey Act, and REVERSE on count III, the violation of the Endangered Species Act.