**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Ronald Peter ANZALONE,**
**Defendant/Appellant.**

No. 85–5158.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 28, 1989.

Decided Sept. 18, 1989.

William J. Genego, University of Southern California Law Center, Los Angeles, Cal., for defendant-appellant.

Dean G. Dunlavey, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

* The Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation.

Before NELSON and BOOCHEVER, Circuit Judges, and BROWNING,* District Judge.

NELSON, Circuit Judge:

Appellant Ronald P. Anzalone appeals his conviction for various offenses arising out of a conspiracy to manufacture, possess and distribute cocaine. For the reasons stated below, we affirm the judgment of the district court.

Anzalone was charged under 21 U.S.C. §§ 841(a)(1), 843(b) & 846 in a nine count indictment. He was first tried by a jury on November 27, 1984. At the end of this trial, a unanimous verdict was announced and appellant was found not guilty on counts six, seven, and nine. One juror, however, dissented to the verdict when polled, and the district court judge declared a mistrial. A second trial was held, at the end of which Anzalone was found guilty on counts one, two, four, five, and nine.[1]

Anzalone raises four issues on appeal: (1) that his retrial on counts six, seven and nine constituted double jeopardy; (2) that the trial court erred in finding that Anzalone was not prejudiced by any errors in the trial transcript; (3) that the trial court erred in failing to disclose the contents of a government witness' presentence report; and (4) that the trial court erred in conducting voir dire.

1. *There was no double jeopardy.*

A district court's denial of a motion to dismiss an indictment on double jeopardy grounds raises a question of constitutional law and is reviewed *de novo*. *United States v. Schwartz*, 785 F.2d 673, 676 (9th Cir.), *cert. denied*, 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986).

Appellant asserts that since the jurors in his first trial announced a verdict of not guilty on counts six, seven and nine, his

1. Anzalone was not charged with count eight of the indictment.

second trial on those counts, which resulted in a conviction on count nine, was barred by the double jeopardy clause. This contention is without merit. We have held that " 'a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, *and* no dissent by a juror is registered.' " *United States v. Nelson*, 692 F.2d 83, 84–85 (9th Cir.1982) (quoting *United States v. Taylor*, 507 F.2d 166, 168 (5th Cir.1975)) (emphasis added). In appellant's first trial, the jury returned a completed verdict form indicating that it had reached a unanimous verdict of guilty on counts one, two, four, and five, and not guilty on counts six, seven and nine. The verdict was then read in open court and the jurors were individually polled. Before polling, however, defense counsel was asked if he wanted the jury polled as to each count or as to the verdict as a whole; he said as a whole. One juror, Mrs. Farrell, said the verdict was not her verdict. The defendant moved for a mistrial. The judge, over appellant's objection, asked Mrs. Farrell if she felt a verdict could be reached on one or more counts. She said, "I don't think so." In spite of her answer, the judge sent the jury to deliberate further. At this point appellant's trial counsel again objected and argued vehemently for a mistrial. He stated that *no unanimous* verdict had been reached *on any count,* and that it was clear that the announced verdict had been a compromise verdict. His relevant comments were as follows:

> Your Honor ... in order to have a verdict, it has to be unanimous. It's clear that in this particular case it is not a unanimous verdict. It seems patently clear to me, Your Honor, knowing the counts that each defendant was acquitted of and each defendant was found guilty of, that it represents what's tantamount to a compromise verdict. . . .

Appellant further argued that he was entitled to a mistrial and to be able to proceed again. The judge, however, allowed the jury to deliberate further in the hope that they might agree on some of the counts. Following is part of the judge's relevant comment:

> Before we conclude that the Jury is in fact deadlocked, I think that they should be allowed to discuss it out among themselves as to ... whether they can find verdicts on some or all of these counts.

Finally, the jury was called back out and several jurors were polled, *together with* Mrs. Farrell. The judge asked if they might reach a verdict on *some of the counts.* Mrs. Farrell said no. Appellant moved again for a mistrial; it was granted over the government's objection. Therefore, no final verdict was reached. *See* F.R.Crim.P. 31(d); *Nelson*, 692 F.2d at 85 ("In this case, no unanimous verdict was rendered; one juror stated that the verdict as rendered was not her verdict.").

Since there was no final verdict on any count, appellant was not subjected to double jeopardy when he was retried and subsequently convicted on several counts, including count nine. *See Nelson*, 692 F.2d at 85.

2. *The trial court did not err in finding that Anzalone was not prejudiced by any errors in the trial transcript.*

■ Appellant contends that his conviction should be reversed based on allegedly inaccurate recordations and transcriptions of the first four days of trial. He asserts that there are inaccuracies and possible omissions which preclude him from bringing a meaningful appeal. In the alternative to a reversal, appellant argues that he is entitled to a new trial because the alleged omissions do not allow him to know of "potential issues which could possibly be raised on appeal."

"Court reporters are required to record proceedings verbatim, 28 U.S.C. § 753(b), but the failure to do so does not require a per se rule of reversal." *United States v. Doyle*, 786 F.2d 1440, 1442 (9th Cir.), *cert. denied*, 479 U.S. 984, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986); *see also United States v. Piascik*, 559 F.2d 545, 548 (9th Cir.1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978) (where trial court concludes that no prejudice has occurred, the conviction cannot be attacked on that basis). The court in *Piascik* further stated that, in accordance with *Brown v. United States*, 314 F.2d 293 (9th Cir.1963), when a

court reporter has failed to record part of the trial proceedings,

> [t]he appropriate procedure is to vacate the judgment and remand for a hearing to determine whether appellant was prejudiced by the error in failing to record the arguments. If the trial court concludes that he was, a new trial may be ordered. *If the court concludes that he was not, a new final judgment may be entered.*

*Piascik,* 559 F.2d at 547 (quoting *Brown,* 314 F.2d at 295) (emphasis added). Although this court has not expressly stated the standard of review for this type of claim, a trial court's factual finding that transcripts are accurate and complete cannot be disturbed unless clearly erroneous. *See Maine v. Taylor,* 477 U.S. 131, 144–45, 106 S.Ct. 2440, 2450, 91 L.Ed.2d 110 (1986).

Based on these standards, appellant's claim fails. First, it is doubtful that there are any omissions from the reporter's transcriptions of the first four days of trial. The government and appellant each hired their own stenographer to review the transcripts. Both stenographers agreed that there were typographical and spelling errors. Appellant's reviewing stenographer, however, repeatedly states in her reports to appellant that "[t]here is no indication further proceedings were deleted or omitted." In addition, the trial court judge stated that although the transcripts covering those days were not of the usual quality for his court, it appeared that they reported the proceedings with reasonable completeness and substantial accuracy. The judge also stated firmly that he would have certainly remembered if the reporter had said that she was unable to get everything down, as appellant contends she said. The judge further stated that he found no errors or omissions that would be in any degree prejudicial to appellant, noting also that appellant had not pointed to any either. Additionally, the judge said the cross-examination of witness Stewart, which appellant claims is missing, never took place; he points out that Stewart presented no evidence against appellant.

The second reason that appellant's claim fails is that, as the trial court judge correctly pointed out, Anzalone has not pointed to any specific prejudice he has suffered from the alleged errors in the transcripts. Appellant argues that he cannot know of "potential unknown errors." However, even assuming there were omissions in the transcripts, appellant cannot prevail without a showing of specific prejudice. We have previously stated that, "[a]lthough we believe that the better procedure is to report everything said in the courtroom, a reversal is not necessary. Defendants allege no prejudice." *United States v. Weiner,* 578 F.2d 757, 789 (9th Cir.) (per curiam), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978); *see also Doyle,* 786 F.2d at 1442. Appellant's claim therefore fails, since he has not shown that the trial judge's certification of the transcripts was clearly erroneous.

■ Appellant alternatively argues that if his conviction is not reversed due to the potential omissions, he should be entitled to an evidentiary hearing with a judge other than the original trial judge to determine if the transcripts are accurate. This argument is frivolous. First, the original trial judge is the one best able to make this kind of determination since he was present throughout the trial. Second, before he certified the records as accurate, the judge allowed appellant every opportunity to present evidence, which appellant did, to challenge the transcripts. Over the course of eighteen months, several hearings were held on this matter. Moreover, on September 14, 1987, a hearing was held at which the court advised the parties that the issue would be submitted upon filings unless *defendant* requested a hearing. Defendant made no request. Additionally, a status hearing was held on February 1, 1988 and no request was made for an evidentiary hearing at that time either. Appellant's request for a hearing at this late date is clearly inappropriate.

3. *The trial court did not err in failing to disclose the contents of a government witness' presentence report or to examine it in camera.*

■ Anzalone contends that he was denied his constitutional right of confronta-

tion when the trial court refused to disclose, or examine in camera, the presentence report of a government witness, Rudolfo Echegoyen. The presentence report was prepared in conjunction with criminal proceedings against Mr. Echegoyen over which Judge Pamela Rymer presided. Appellant argues that the presentence report was necessary in order for him to impeach the credibility of Mr. Echegoyen. Appellant's argument is without merit. A district court's decision regarding whether or not to release a presentence report is reviewed for abuse of discretion. *United States v. Schlette*, 842 F.2d 1574, 1576–77, *modified*, 854 F.2d 359 (9th Cir.1988); *see also United States v. Chavez–Vernaza*, 844 F.2d 1368, 1375 (9th Cir.1987) (the district court, in its discretion, may deny an accused the opportunity to inspect presentence report); *United States v. Walker*, 491 F.2d 236, 238 (9th Cir.), *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974).

In *Chavez* we held that a defendant has no constitutional right to examine presentence reports, but that a court *may* in its discretion make an in camera inspection of the materials *or* may rely on examination by a probation officer. *Chavez*, 844 F.2d at 1375. Based on this holding, appellant's argument that Judge Hupp, who presided over appellant's first trial, was required to examine the presentence report rather than Judge Rymer is clearly wrong. Judge Rymer was familiar with the cases and reviewed the report at Judge Hupp's request. Additionally, she heard arguments from Anzalone and the government pertaining to the request. Appellant's motion was therefore given proper consideration, as required by *Chavez*, before it was denied. Thus, appellant's constitutional right was not violated.

■ Further, the district court did not abuse its discretion in denying this motion. Judge Rymer noted, as one reason for her denial, the untimeliness of the motion. It was made at the *end* of cross-examination of Mr. Echegoyen. All parties knew well in advance of the first trial that Mr. Echegoyen would testify. Indeed, the motion

was never made nor joined in by appellant's trial counsel. It was made by the counsel for his codefendant. Finally, no motion was ever made for this report before or during the second trial. The timing is important in that it helps to defeat appellant's argument that he was prejudiced by Judge Rymer's failure to release the report. Since the motion to disclose Mr. Echegoyen's presentence report was made at the end of his testimony in the first trial, and was never made in the second trial, appellant's argument that he was denied a fair trial due to the non-disclosure is illusory.

Additionally, appellant must show that the disclosure of the presentence report was required in order to meet the ends of justice. *Schlette*, 842 F.2d at 1579. When a court is called upon to release a presentence report, the court must balance the desire for confidentiality of the reports against the need for their disclosure, with "a strong presumption in favor of confidentiality." *Id.* The defendant must show a large compelling need for disclosure in order to meet the "ends of justice." *Id.*

We have made this compelling need determination based on several factors. The defendant must first show that the report pertains to a significant witness. The court must then release whatever is relevant, material and probative, but *not* what is cumulative. *United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989).

Applying these factors, the trial court did not err in denying appellant's request for the presentence report. Appellant had access to Mr. Echegoyen's criminal record, the terms of his cooperation agreement with the government, a transcript of his false testimony under oath in 1983, and ample other information with which to impeach him. Appellant has not shown that there might be anything in the report that was not, therefore, cumulative. In addition, since there were other government witnesses who collaborated Mr. Echegoyen's testimony, it is doubtful that Mr. Echegoyen was a significant witness.

It is clear that the district court did not abuse its discretion in denying appellant's request for disclosure of the presentence report, since appellant has not shown that disclosure was necessary to serve the ends of justice.

### 4. *The trial court did not err in conducting voir dire.*

Appellant's final contention is that his conviction should be reversed based on three errors allegedly committed by the trial court during voir dire in the second trial.

██ Where the district court conducted voir dire and neither party objected to the scope of the court's questions, we will review the conduct of the voir dire only to determine whether there was plain error. *United States v. Flores–Elias*, 650 F.2d 1149, 1151 (9th Cir.), *cert. denied*, 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 223 (1981) (citing Fed.R.Crim.P. 52(b)). A plain error is a highly prejudicial error affecting substantial rights. *Id.* A criminal conviction will be reversed on the basis of plain error only when it is necessary to prevent a clear miscarriage of justice or to preserve the integrity of the judicial process. *Id. See also United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986) (reversal on basis of plain error is an exceptional remedy). District court judges are granted broad discretion in their conduct of voir dire; to obtain a reversal "requires a showing that 'the procedures used or the questions propounded are so unreasonable as to constitute an abuse of discretion.'" *Flores–Elias*, 650 F.2d at 1151 (quoting *United States v. Rosales–Lopez*, 617 F.2d 1349, 1353 (9th Cir.1980), *aff'd*, 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981)).

### a. Dismissal of entire panel.

██ Appellant's first allegation of error regarding voir dire is that it was improper for the trial judge to dismiss an entire panel of prospective jurors after the judge asked the panel, as a whole, whether they would be willing to serve on a case which might last several weeks, and many had responded that they would not. This claim is implausible for two reasons: (1) it is not supported by the record and (2) it is

unlikely a judge would do this in light of the great expense involved in assembling a panel of jurors in the Central District of California. The fact that an entire panel was dismissed by the trial judge does not appear in the record. The attorney for appellant states that appellant apprised him of this. However, even if the judge did dismiss an entire panel, appellant could not claim that this was a highly prejudicial error affecting his substantial rights, and he would therefore not be entitled to a reversal of his conviction. *Flores–Elias*, 650 F.2d at 1151. Appellant's argument that the jurors who were ultimately selected to serve on his jury were not an impartial group selected from a cross-section of the community is without merit. Appellant bases this contention on his allegation that the previous panel was dismissed for indicating that they could not serve on a three to four week trial. The dismissal of the first panel is not relevant to the impartiality of the jurors who were ultimately selected, however. Because the obligation to impanel an impartial jury lies with the trial judge, federal judges are accorded broad discretion in determining how best to conduct voir dire. *Rosales–Lopez*, 451 U.S. at 189, 101 S.Ct. at 1634. Appellant has not demonstrated that the trial judge erred in his conduct of voir dire based on this argument.

### b. Failure to ask jurors whether they knew any of the witnesses.

██ Appellant's claim that his conviction should be reversed because the district court did not ask the jurors whether or not they knew any of the witnesses also fails. Appellant's attorney was allowed to submit questions to the district judge to be asked on voir dire and did not submit this question. He cannot now claim he was denied a fair trial solely because this question was not asked. The case upon which Anzalone relies, *United States v. Baldwin*, 607 F.2d 1295 (9th Cir.1979) is distinguishable. In that case, the defendant's attorney specifically requested that the judge ask the above question and his request was denied. The court stated, "[h]owever, the decisive factor in the case at bar is that the trial judge *refused* to ask both [whether the jury would be influenced by testimony

from law enforcement officers] and the question of whether the prospective jurors were related to any of the prospective witnesses...." *Id.* at 1298. In addition, Anzalone has not shown how the failure to ask that question affected his right to a fair trial. It is not reversible error to fail to ask a question, even when submitted by counsel, if the failure did not affect the jury. *Rosales–Lopez v. United States,* 451 U.S. 182, 192, 101 S.Ct. 1629, 1636, 68 L.Ed.2d 22 (1981). The trial court has broad discretion as to the questions to be asked at voir dire. *Id.* at 189, 101 S.Ct. at 1634 (citing *Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931)). Appellant has not shown that the district court abused that discretion.

   c.  Questioning jurors on their personal experiences involving drugs in presence of other jurors.

■ Appellant's final claim of reversible error on voir dire examination is also without merit. Anzalone contends that the district court judge erred when he questioned the prospective jurors collectively as to their opinions about drugs and as to any experiences they or others they knew had had with drugs. He asserts that the responses given by several jurors in the presence of other jurors were prejudicial. There is no support for this argument. Indeed, appellant gives no authority, and case law is directly contradictory to his position. *See United States v. Casey,* 835 F.2d 148, 152 (7th Cir.1987) (national attention to the long standing problem of drug trafficking does not create need to question jurors individually); *United States v. Dennis,* 786 F.2d 1029, 1044 (11th Cir.1986), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987).

In addition, the response which appellant contends was prejudicial to the remaining jurors does not appear to be so. A juror indicated that her son had been arrested for possession of marijuana and had since straightened out, gotten married, and had a child. In *Dennis,* the prospective jurors were also questioned in the presence of other jurors about their life experiences with drugs. Five jurors responded that they had had bad experiences, including one juror who stated that her oldest child had been murdered in a drug killing. That court held,

> we find the statements made by the five panel members who were excused to have been insufficient to require the court to conduct additional voir dire of the remaining panel members. At most, the statements served to heighten the remaining jurors' awareness of some of the possible consequences of drug use. We are not convinced that they posed any threat to the fairness and legality of the defendant's trial.

*Id.* at 1044. Appellant has failed to show that the district court abused its discretion in not questioning jurors out of the presence of other prospective jurors regarding this matter.

"Since [there is] no abuse of discretion the conduct of the voir dire did not constitute error and accordingly it cannot reach the level of plain error." *Flores–Elias,* 650 F.2d at 1151.

The judgment of the District Court is AFFIRMED.