15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America Plaintiff-Appellee,
v.
Vincent MEO Defendant-Appellant.
 No. 92-10197.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1993.*
Decided Jan. 18, 1994.
 
 1
 Before: KOZINSKI, O'SCANNLAIN, Circuit Judges, and THOMAS S. ZILLY, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Vincent Meo timely appealed his conviction and sentence for bankruptcy fraud, and moved for correction of the record on appeal. We deny the motion to correct the record and AFFIRM the district court's conviction and sentence.
 
 FACTS
 
 4
 In early 1984, appeallant Vincent Meo established All American Recreational Vehicles (AARV), a dealership engaged in renting and selling recreational vehicles and motorhomes (RVs). Mr. Meo served as president of the corporation. Two RV companies, Winnebago and Fleetwood, had financing agreements with Mr. Meo and AARV under which those companies would provide RVs to AARV and would then be paid the wholesale invoice price of the RVs when AARV sold the vehicles.
 
 
 5
 By late 1985, AARV began experiencing financial problems, and sold several RVs without making payment to Winnebago or Fleetwood. In early December, 1985, Mr. Meo, on behalf of AARV, filed for Chapter 11 bankruptcy. From December, 1985 until mid-May, 1986, Mr. Meo and AARV continued to make payments to Winnebago and ITT, Fleetwood's finance company, pursuant to the security agreements and the requirements of the bankruptcy court.
 
 
 6
 On May 27, 1986, John Hannah, Winnebago operations manager, ordered Robert Wilkie, a field auditor, to conduct an emergency audit of AARV. Wilkie determined that of the fifty RVs that were supposed to be at the lot, only nineteen vehicles remained. He was told that no one was available to speak about the missing RVs, and that there were no records available for the RVs. Reporter's Transcript ("RT") 236-242. Winnebago then obtained an order from the bankruptcy court, restraining AARV from selling or otherwise disposing of any of the proceeds of the sales of those vehicles. RT 135, 243. Mr. Wilkie returned to AARV on May 28, 1986, and found that two additional vehicles had been removed from the lot.
 
 
 7
 John Funk, an auditor for ITT, conducted an audit of the Fleetwood inventory at AARV on May 15, 1986, at which time all vehicles were there except one, for which ITT received payment shortly thereafter. However, when he returned to AARV on June 2, 1986, there were six vehicles missing that had not been paid for. RT 297-298. Mr. Funk testified that on June 2, 1986, there was no one at the lot or offices, and that the business appeared to be closed down.
 
 
 8
 On March 1, 1991, Vincent Meo was charged in an indictment with twenty-eight counts of bankruptcy fraud in violation of 18 U.S.C. Sec. 152. Each count charged that Mr. Meo, as agent of AARV and individually, intended to defeat the provisions of Title 11 of the bankruptcy laws by knowingly and fraudulently transferring and concealing from creditors the proceeds of sales of certain RVs. Each count of the indictment related to a separate RV.
 
 
 9
 Mr. Meo was tried before a jury. Lewis Evans, Mr. Meo's business partner and secretary-treasurer of AARV, testified that Mr. Meo told him just before the Memorial Day weekend in May of 1986 to "go home and not answer the phone--just trust me." RT 705. Evans further testified that he was unaware of the sales of RVs over the Memorial Day weekend and that, upon returning to AARV after the weekend, he determined that all of the records had been removed from the offices and that he was unable to "pull up" any financial information from the office computers. RT 706-707.
 
 
 10
 Wayne Hayes testified that he purchased eight new Winnebago RVs from AARV on May 23, 1986 and testified that Mr. Meo was the "closer" on the sales. RT 440. The RVs, with a total value of $196,000, were sold to Hayes for 60,000 shares of "Diogenes" stock and $3,302 in cash. Hayes testified that Mr. Meo had put a value of $3 per share on the stock. RT 442.
 
 
 11
 Albin Danell, an attorney for Diogenes, testified that he had sold Diogenes stock given to him to pay his legal fees for thirty-five cents per share. Michael Zink, an expert in "over-the-counter" stocks, testified that in May, 1986, the Diogenes stock certificates had a value of three to five cents per share. RT 564-65. Zink also testified that the conditions of sale and transfer of the stock had not been satisfied, so the stock certificates were of no value to AARV. RT 562-63.
 
 
 12
 Ralph Posey testified that he purchased six RVs from AARV on May 24, 1986, with a total value of $162,973.27, for 50,000 shares of Diogenes stock and $2,690 in cash. RT 480-484; Excerpt of Record ("ER") 7, Exhs. 20-25. Richard Hoemberg testified that he purchased three RVs for 30,000 shares of Diogenes stock and $1,722 cash. RT 538; ER 7, Exhs. 27-29.
 
 
 13
 Dale Peterson bought a new Winnebago RV on May 23, 1986, for $25,958.65, for which he traded in a 1983 Isuzu for a trade-in value of $19,900, and paid $6,000 in cash. Mr. Peterson testified that the Isuzu was not worth $19,900 and that he "got a very good deal." RT 614-616. Robert Forster purchased a Winnebago with a contract price of $41,096.53 from AARV on May 26, 1986. Mr. Forster testified that he received $36,500 on the trade-in of a 1983 Oldsmobile, paid $4,600 in cash, and got the "best deal he ever got." RT 631. Other witnesses testified about similar RV purchases using trade-ins of inflated value.
 
 
 14
 The jury returned a guilty verdict on Counts One through Twenty-One, Twenty-Three, and Twenty-Five through Twenty-Seven. On March 6, 1992, the defendant was sentenced to five years in prison on Count One and five years concurrent probation on the remaining counts.
 
 
 15
 Appellant Meo has challenged his conviction and sentencing on numerous grounds, none of which have merit.
 
 ANALYSIS
 1. Adequacy of jury instructions
 
 16
 A district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Linn, 880 F.2d 209, 217 (9th Cir.1989). "Jury instructions are considered as a whole to determine if they are misleading or inadequate. However, whether a jury instruction misstated elements of a statutory crime is a question of law and is reviewed de novo." United States v. Spillone, 879 F.2d 514, 525 (9th Cir.1989), cert. denied, 498 U.S. 864, 116 L.Ed.2d 80, 112 S.Ct. 111 (1991).
 
 
 17
 In its preliminary instructions, the trial court instructed the jury that:
 
 
 18
 The indictment is simply a description of the charges against the defendant. The indictment is not proof of guilt or innocence. He is not guilty until and unless proved beyond a reasonable doubt.
 
 
 19
 At the close of the evidence, the court instructed the jury that "the government must prove each of the following essential elements beyond a reasonable doubt...." The court gave no specific instruction defining the meaning of "reasonable doubt." Appellant argues that this failure to define reasonable doubt constitutes reversible error.
 
 
 20
 In United States v. Nolasco, 926 F.2d 869 (9th Cir.), cert. denied, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991), we held that an "instruction defining reasonable doubt is permissible but not necessarily required." Nolasco, 926 F.2d at 872. The decision not to define reasonable doubt is an abuse of discretion "only when under the circumstances of the case the instructions fail to articulate the heavy burden intended by the reasonable doubt standard." Nolasco, 926 F.2d at 872-73.
 
 
 21
 Appellant argues that a recent Supreme Court decision mandates that we overrule Nolasco and require that district judges give an instruction defining reasonable doubt. In Sullivan v. Louisiana, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court held that a jury instruction that improperly defines reasonable doubt can never constitute harmless error, and requires reversal of a conviction by a jury so instructed. Pointing to Sullivan, appellant argues that "a trial judge's giving the jury no definition at all of reasonable doubt is far worse than giving a constitutionally inadequate definition," and therefore requires reversal. Appellant's Reply Brief at 3. Appellant's argument is without merit.
 
 
 22
 Sullivan does not affect the reasoning of this Court in Nolasco. Under Nolasco, a trial court is free to define reasonable doubt to the jury, or not. Sullivan simply requires that if an instruction defining reasonable doubt is given, the instruction must be adequate.
 
 
 23
 Appellant also contends that the trial judge erred in failing to instruct the jury not to infer guilt from Mr. Meo's failure to testify. Appellant concedes that the judge gave such a preliminary instruction, but argues that this was inadequate.
 
 
 24
 Appellant cites no authority for the proposition that the proposed instruction must be given both in preliminary instructions and prior to deliberations. Mr. Meo's counsel did not request such an instruction. There was no error in the manner in which the district court gave the instruction on failure to testify.
 
 
 25
 Appellant next challenges the jury instructions given by the court regarding bankruptcy fraud, arguing that these were insufficient. The court correctly advised the jury that the offense charged in the indictment was knowingly and fraudulently concealing assets from the bankruptcy court. The court then instructed the jury that the government must prove:
 
 
 26
 One, that on or about the date alleged in the indictment the proceeding in bankruptcy was in existence;
 
 
 27
 Two, the defendant, Vincent Meo, fraudulently concealed the property under the bankruptcy under--from the court, and
 
 
 28
 Three, that the property belonged to the estate of the debtor.
 
 
 29
 Now, the parties here have stipulated that elements one and three are proven in this case and, therefore, you should, in your deliberations, focus on that second element, which for emphasis I will reiterate:
 
 
 30
 Whether the defendant, Vincent Meo, concealed the property of the indictment from the knowledge of the bankruptcy court.
 
 The court further advised the jury:
 
 31
 An attempt to defraud is an attempt to cause someone an economic loss by deceiving or cheating.
 
 
 32
 A person fraudulently conceals property of the estate of the debtor when that person knowingly withholds information or property or knowingly acts to prevent the discovery of such property intending to cheat a custodian or bankruptcy judge.
 
 
 33
 Fraudulently concealing property of the estate of the debtor may include transferring the property of an entity, withholding the knowledge concerning the existence or whereabouts of the property or knowingly doing anything else by which that person acts to defraud any of his creditors or defeat the provisions of the bankruptcy laws.
 
 
 34
 Appellant provides no authority to support his argument that these instructions were deficient. Mr. Meo's counsel did not object to these instructions, and, in fact, suggested several changes to which the court agreed. Where there is no objection to the jury instructions at the time of trial, the instructions are reviewed for plain error. United States v. Kessi, 868 F.2d 1097, 1102 (9th Cir.1989). Plain error is found only in exceptional circumstances. Id. There was no error in this case.
 
 
 35
 Finally, appellant contends that the court erred by failing to give a "specific intent" instruction. Appellant cites no authority for the proposition that this failure constitutes error. The district court correctly identified the element of fraudulent concealment, and instructed the jury on the mental state required to prove intent to defraud.
 
 2. Sixth Amendment claims
 
 36
 The customary procedure for bringing Sixth Amendment claims is a collateral attack on the conviction under 28 U.S.C. Sec. 2255. However, we have indicated that we will consider such claims on direct appeal where the merits of the claimed errors or omissions can be evaluated based on the record that is before the Court. United States v. Christoffel, 952 F.2d 1086, 1090 (9th Cir.1991), cert. denied, --- U.S. ----, 118 L.Ed.2d 410, 112 S.Ct. 1700 (1992).
 
 
 37
 Appellant points to four errors or omissions that may be evaluated based on the record: (1) Trial counsel did not ask the judge to issue a jury instruction defining reasonable doubt; (2) trial counsel failed to mention reasonable doubt in her closing argument to the jury; (3) trial counsel told the jury in her opening argument that "Meo did intend to defraud anyone," and (4) trial counsel called two defense witnesses "out of order" during presentation of the government's case-in-chief.
 
 
 38
 Other errors pointed to by appellant may not be evaluated based on the record, such as whether trial counsel "failed to advise Meo to testify in his behalf," and will not be considered.
 
 
 39
 [A] defendant claiming ineffective assistance of counsel must ... demonstrate (1) that counsel's actions were "outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-690, 104 S.Ct. 2052, 2065-68, 80 L.Ed.2d 674 (1984).... Whether the facts suffice to establish " 'the performance and prejudice components of the ineffectiveness inquiry' " is a question that we review de novo. United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986) (quoting Strickland, 466 U.S. at 698, 104 S.Ct. at 2070).
 
 
 40
 United States v. Layton, 855 F.2d 1388, 1416 (9th Cir.1988), cert. denied, 489 U.S. 1046, 103 L.Ed.2d 244, 109 S.Ct. 1178 (1989).
 
 
 41
 Appellant claims that trial counsel was ineffective because she did not ask the judge to issue a jury instruction defining reasonable doubt. We have previously held that an instruction defining "reasonable doubt" is not required. Nolasco, 926 F.2d at 871. Failure to ask for such an instruction cannot be said to have prejudiced the defendant.
 
 
 42
 Second, appellant argues that trial counsel failed to mention reasonable doubt in her closing argument to the jury. Appellant's trial counsel argued at length about Mr. Meo's lack of intent to defraud his creditors or the bankruptcy court. Counsel reviewed the evidence presented by the Government and argued that the Government had failed to prove intent to defraud. With regard to one set of sales, counsel specifically stated: "we don't know what happened on this, but the government has not proved beyond a reasonable doubt that Mr. Meo had anything to do with the Bandoni contract personally and had any intent to defraud on that contract." RT 869. "Failure" of counsel to invoke the term "reasonable doubt" elsewhere in her closing arguments was neither incompetent nor prejudicial to appellant.
 
 
 43
 Third, appellant argues that trial counsel told the jury in her opening argument that "Meo did intend to defraud anyone." Whether trial counsel misspoke or whether the statement was incorrectly transcribed is unclear from the record. However, even if trial counsel uttered the phrase attributed to her, the wording of the phrase would suggest to a reasonable jury not that defense counsel was arguing that her client was guilty, but rather that defense counsel simply misspoke. In addition, in her closing arguments, Mr. Meo's counsel repeatedly argued that Meo did not intend to defraud anyone. Counsel's arguments were neither incompetent nor prejudicial to appellant.
 
 
 44
 Finally, appellant argues that trial counsel called two defense witnesses "out of order" in the middle of the government's case-in-chief. Mr. Meo's counsel called the two defense witnesses for the convenience of those witnesses. The trial court allowed testimony from the two witnesses during the prosecution's case over the initial objection of the prosecution. Appellant fails to provide any authority in support of his argument that the placement of these witnesses reflected incompetence or prejudiced his case.
 
 
 45
 3. Jury Deliberations Before Thanksgiving Holiday
 
 
 46
 The court ordered the jury to begin deliberations on the day before Thanksgiving. Appellant argues that he was prejudiced by this timing "because the jury was rushed into a hasty verdict, as jurors did not want to remain trapped in court on the long 4-day Thanksgiving weekend." Appellant's Opening Brief (AOB) at 15.
 
 
 47
 Appellant has provided no evidence of prejudice to Mr. Meo or bias by the trial court, and cites no authority to support the proposition that it is reversible error for a trial court to order a jury to begin deliberations on the day prior to a long weekend.
 
 
 48
 4. Admission into evidence of copies of sales contracts, blue book valuations, and summary charts
 
 
 49
 Rulings on the admissibility of evidence that involve factual determinations are reviewed for abuse of discretion. United States v. Owens, 789 F.2d 750, 753 (9th Cir.1986), rev'd on other grounds, 484 U.S. 554, 98 L.Ed.2d 951, 108 S.Ct. 838 (1988).
 
 
 50
 Appellant argues that the district court erred in admitting photocopies of incomplete sales contracts for several RVs. Prior to trial, the prosecution advised the court that it would be submitting copies of the sales contracts, described its unsuccessful efforts to locate the originals, and represented to the court that the copies were the best it was able to obtain after a reasonable search for the documents.
 
 
 51
 Mr. Meo's counsel did not object to admission of Exhibits 27-29. The trial court properly admitted these exhibits.[1]
 
 
 52
 Appellants arguments about exhibits 11-25 have no merit. Appellant has failed to raise a genuine question as to the authenticity of the sales contracts. In addition, evidence in the record supports a finding that the originals had been destroyed or were unobtainable.
 
 
 53
 Appellant challenges the admission of blue book valuations for the vehicles traded in for RVs on the basis that the blue book is "just a vague 'guide' as to vehicle value, and does not consider the values of options and accessories." AOB 20. Appellant further challenges use of blue book values to create charts used during trial. The charts were used for illustrative purposes during the trial, but were admitted into evidence and sent to the jury room after a request by the jury for the charts.
 
 
 54
 Exhibit 41, pages from two Kelly Blue Books, was first shown to Dale Peterson with regard to his trade-in of a 1983 Isuzu for an RV. Peterson, who had been in the wholesale and retail car business most of his life, testified that the Kelly Blue Book was a standard reference within the used car industry. An FBI agent, MacDonald, later testified as to the value of certain vehicles traded in for RVs based on pages from a Kelly Blue Book listing evaluations for used vehicles during the period of May through August 1986, and exhibit 41 was admitted into evidence. Agent McDonald further testified that in his personal experience, based on the purchase of numerous cars during his lifetime, the Kelly Blue Book was a document used in the used-car business.
 
 
 55
 The testimony of Dale Peterson and Agent McDonald was sufficient to justify the admissibility of Blue Book valuations of the used automobiles. Fed.R.Evid. 803(17).
 
 
 56
 The charts objected to by appellant were used for illustrative purposes only during trial. The court instructed the jury prior to their use by the prosecution that the charts were not evidence, and that if their own recollection of the evidence was different from that reflected on the charts, they should be governed by their own recollection. All of the information on the charts, with the exception of the value of the stock traded for the RVs and the Kelly Blue Book value for the trade-in of the automobile reflected in the purchase agreement, was taken directly from the applicable sales contract already admitted into evidence.
 
 
 57
 During jury deliberations, the jury sent a note to the court stating: "May we have the big charts? It's impossible to tell from the indictment which transaction is which." After discussing the request with counsel, the court agreed to send small copies of the charts into the jury room after deleting from the charts the value of the Diogenes stock and the Kelly Blue Book valuations. The district court did not abuse its discretion in sending the charts to the jury.
 
 
 58
 5. Testimony of government expert regarding value of stock
 
 
 59
 A district court's admission of expert testimony is reviewed for "an abuse of discretion or 'manifest error.' " United States v. Dorotich, 900 F.2d 192, 194 (9th Cir.1990). Appellant challenges the qualification of Michael Zink to testify as an expert on the value of the Diogenes stock, and challenges use of a commercial stock valuation sheet on the value of the stock as a foundation for Zink's testimony.
 
 
 60
 Michael Zink testified that he had been an employee of the National Association of Security Dealers for eleven years. He testified that as part of his responsibilities, he conducted examinations of security brokers and dealers to insure that they were complying with federal securities law, and that he had served for five years as the supervisor of examiners. Zink was accepted as an expert in over-the-counter stocks without objection from Mr. Meo's defense counsel.
 
 
 61
 Zink examined the Diogenes stock certificates and testified that, based on the restrictive language on the certificates, AARV would not have been able to trade them on the over-the-counter market even if they had been transferred properly to AARV. Zink testified, by reference to the National Stock Summary for 1986, that a broker would have paid no more than three cents a share for Diogenes stock and would have sold the stock for no more than five cents a share.
 
 
 62
 The National Stock Summary was admissible pursuant to Federal Rules of Evidence 803(17) as a published summary relied on by the profession. The district court did not abuse its discretion in allowing Michael Zink to testify as to the value of the Diogenes stock.
 
 
 63
 6. Exclusion of evidence of appellant's settlement agreements with Winnebago Acceptance Corporation and ITT Financial Services
 
 
 64
 A trial court's rejection of defense evidence as irrelevant is reviewed for abuse of discretion and will not be reversed absent some prejudice. United States v. Lee, 846 F.2d 531, 536 (9th Cir.1988). Appellant contends that the trial court abused its discretion in excluding evidence of Mr. Meo's settlement agreements in 1990 with Winnebago Acceptance Corporation and ITT Financial Services, as evidence of lack of criminal intent and as evidence that Winnebago and ITT did not suffer any loss. Appellant contends that the agreement also would have shown that Mr. Meo relied on advice of his counsel in 1986, and that this advice was a defense to the charge of criminal intent.
 
 
 65
 The trial court ruled that the settlement agreements were irrelevant to the criminal charges at issue. In so doing, the trial court properly ruled that settlements reached in 1990 had no bearing on Mr. Meo's intent in 1986 at the time of sale of the RVs.
 
 
 66
 7. Return of the indictment five years after the charged offenses
 
 
 67
 In general, issues may not be raised for the first time on appeal. Jovanovich v. United States, 813 F.2d 1035, 1037 (9th Cir.1987). A defendant claiming pre-indictment delay bears a heavy burden of showing that delay caused him actual, non-speculative prejudice and that the reasons for the delay offended "fundamental conceptions of justice which lie at the base of our civil and political institutions ... and which define the community sense of fair play and decency." United States v. Lovasco, 431 U.S. 783, 790, 52 L.Ed.2d 752, 97 S.Ct. 2044, 2049 (1977).
 
 
 68
 Appellant contends that he raised this issue before the trial court in his unsuccessful Motion to Dismiss the Indictment for Government Misconduct and Abuse of Grand Jury Process. However, the motion did not raise the issue of prejudice due to delay, or mention that several potential witnesses had died in the interval. Thus appellant did not raise this issue before the trial court.
 
 
 69
 There are three exceptions to the general rule that issues may not be raised initially on appeal:
 
 
 70
 (1) when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process;
 
 
 71
 (2) when a change in law raises a new issue while an appeal is pending; and
 
 
 72
 (3) when the issue is purely one of law.
 
 
 73
 Jovanovich, 813 F.2d at 1037. In this case, the issue of prejudice to appellant from the delay in return of the indictment is one of fact, and there has been no intervening change in law. The question then is whether review of this issue is necessary "to prevent a miscarriage of justice or to preserve the integrity of the judicial process." The clear answer is no.
 
 
 74
 Even if we were to review appellant's claim on the merits, his arguments would not support a finding that he was prejudiced by the delay in return of the indictment.
 
 
 75
 Appellant contends that in the five years between the sale of the RVs and the time the indictment was returned, three crucial witnesses died: George Sparling, a salesperson at AARV, "who concocted the idea of trading the RVs for Diogenesf [sic] stock (and who probably is the AARV official who signed the sales contracts for which appellant was blamed and convicted)" AOB 21; Mr. Crane, one of the RV buyers; and Judge Rainville of the bankruptcy court, "who refused to find Meo in contempt for selling the 25 RVs (in June 1986) and who did not consider Meo to have committed bankruptcy fraud." AOB 21-22.
 
 
 76
 The vague, speculative claim that the three persons who died before trial might possibly have provided testimony helpful to appellant is insufficient to show actual prejudice. Lovasco, 431 U.S. at 790.
 
 
 77
 8. Failure of the indictment to charge the corporation with bankruptcy fraud
 
 
 78
 The indictment charged Mr. Meo individually, and as an agent of AARV, with violating the provisions of 18 U.S.C. Sec. 152. Meo contends that the indictment must be dismissed because the corporation was not charged. Appellant's argument is without merit. The statute under which Appellant was charged provides for the indictment of "[w]hoever, either individually or as an agent or officer of any person or corporation" transfers property with intent to defeat bankruptcy laws. 18 U.S.C. Sec. 152. Mr. Meo was the President of AARV at the time of the transfers, and the government put on evidence that he knew of and facilitated the transfers. Mr. Meo was properly charged with his own criminal conduct.
 
 
 79
 9. Sufficiency of the evidence for conviction
 
 
 80
 Appellant failed to raise the issue of sufficiency of the evidence before the trial court. He thus failed to preserve this issue for appeal. United States v. Harden, 846 F.2d 1229, 1232 (9th Cir.), cert. denied, 488 U.S. 910, 102 L.Ed.2d 252, 109 S.Ct. 264 (1988). Even if we were to review the sufficiency of the evidence on the merits, we "will reverse on the basis of insufficient evidence only if, viewing the evidence in the light most favorable to the Government, we determine that no rational trier of fact could have found the elements of the crime beyond a reasonable doubt." Harden, 846 F.2d at 1232 (citation omitted). In this case, the evidence presented by the Government was sufficient to support the conclusion that appellant knowingly and fraudulently defrauded his creditors and the bankruptcy court through sale of the RVs.
 
 10. Imposition of five-year prison term
 
 81
 Because the offenses charged in the indictment occurred in May, 1986 this is a pre-guidelines case. We will review only for an abuse of discretion. United States v. Yarbrough, 852 F.2d 1522, 1545 (9th Cir.), cert. denied, 488 U.S. 866, 102 L.Ed.2d 140, 109 S.Ct. 171 (1988).
 
 
 82
 Appellant was convicted on twenty-five counts of bankruptcy fraud. Appellant objects that it was inappropriate to base the sentence on a loss amount of $700,000. However, appellant and the prosecution stipulated at the time of sentencing to a loss to his creditors of $700,000 through sales of the RVs. In addition, the district court based the sentence not on the dollar amount of loss, but rather on the evidence which was presented at trial.
 
 
 83
 The district court did not abuse its discretion in imposing a single five year sentence with five years concurrent probation on the remaining counts.
 
 
 84
 11. Alleged inaccuracies in the reporter's transcript
 
 
 85
 A transcript need not be correct in every detail, it need only "report the proceedings with reasonable completeness and substantial accuracy." United States v. Anzalone, 886 F.2d 229, 232 (9th Cir.1989). Even if an appellant demonstrates that there were omissions in the transcript, "appellant cannot prevail without a showing of specific prejudice." Anzalone, 886 F.2d at 232. A trial court's ruling regarding the adequacy of the reporter's transcript is reviewed under a clearly erroneous standard. Anzalone, 886 F.2d at 232.
 
 
 86
 Appellant contends that the reporter's transcript omits blocks of testimony, the objections of counsel, and rulings of the trial judge on evidentiary objections, and that her transcription of testimony was, in many places, erroneous. Appellant contends that omissions and errors in the reporter's transcript are prejudicial in that they prevent this court from evaluating his appeal fairly.
 
 
 87
 The trial court reviewed the transcript against appellant's allegations of error and omissions in the record and denied a motion for an evidentiary hearing to correct record and motion for new trial. The court found "with minor corrections ... that the transcript reports the proceedings with reasonable completeness and substantial accuracy, and that defendant's appeal is not prejudiced by the minor errors noted." Amended Order of April 9, 1993.
 
 
 88
 We have reviewed the list of errors submitted by appellant and find that the trial court's assessment of the completeness and accuracy of the transcript is not clearly erroneous. We further find that our review is not impeded by any of the minor inaccuracies alleged in the record.
 
 CONCLUSION
 
 89
 We deny the motion to correct record and AFFIRM the district court's conviction and sentence.
 
 AFFIRMED
 
 
 *
 The panel unanimously found this case suitable for submission without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 On appeal, Meo contends that exhibits 27-29 should nevertheless not have been admitted because it is unclear whether someone forged the signature "Vincent Meo" or, in the alternative, whether the signature is of Vincent W. Meo, the appellant, or Vincent C. Meo, appellant's nephew, who allegedly worked at AARV during the time period of the sales
 We note that the contracts at exhibits 27-29 were signed by a "Vincent Meo," and that the blank for "Title" next to the signature line has been filled in with the hand-written designation "Pres." This is evidence that Appellant Meo signed the contracts, not his namesake nephew.