983 F.2d 1079
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge Luis PEINADO-LEON, Defendant-Appellant.
 No. 90-10455.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1992.
Decided Dec. 29, 1992.
 
 Before SNEED, SCHROEDER and T.G. NELSON, Circuit Judges.
 
 ORDER
 
 1
 The Government's Petition for Rehearing is DENIED and the Memorandum disposition filed February 5, 1992, and order filed July 8, 1992 are each withdrawn. The attached Memorandum disposition will be filed in its stead.
 
 
 2
 MEMORANDUM*
 
 
 3
 Jorge Luis Peinado-Leon (Peinado) appeals his conviction for possession with intent to distribute approximately 120 kilos of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii). Peinado alleges that the automobile search conducted by border patrol agents was unlawful and consequently the marijuana found pursuant to that search was inadmissible at trial.
 
 
 4
 On March 10, 1990, Peinado was approached by two border patrol agents as he returned to the yellow Ford LTD that he had parked in a restaurant parking lot. Earlier that afternoon one of the agents had seen the vehicle traveling very fast on a muddy road, known for drug trafficking. Prior to Peinado's return, the agents looked into the car and saw a clean jack and spare tire in the back seat. This aroused their suspicions because they had seen drug smugglers remove equipment typically stored in the trunk to make room for large quantities of drugs. As Peinado returned to the car, the border patrol agents introduced themselves and asked him where he was from. Peinado explained that he was from the area and that he worked for a man named "Pancho." Agent James Grasky then asked Peinado to open his trunk: "Please, I want you to open your trunk." Peinado responded by saying, "There is marijuana."
 
 
 5
 The district court determined that the search was not consensual, but nonetheless held that the search was justified because the Peinado's statement provided probable cause. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We reverse.
 
 
 6
 * INVESTIGATORY STOP
 
 
 7
 On appeal Peinado contends that the agents had no founded suspicion to stop and question him. This claim is without merit. A trial judge's finding of founded suspicion to stop based on specific, articulable facts is reviewed de novo. United States v. Carrillo, 902 F.2d 1405, 1410 (9th Cir.1990). We review de novo motions to suppress. United States v. Homick, 964 F.2d 899, 902 (9th Cir.1992).
 
 
 8
 Peinado was driving at a high rate of speed in a remote area on a muddy road that was a known route for drug and illegal alien trafficking. The border patrol agent observed this conduct and also found clean trunk equipment stored in the automobile's back seat. The agents' initial inquiry was brief, non-intrusive and occurred when Peinado approached his car in a public parking lot. Terry v. Ohio permits this sort of brief questioning to establish a person's identity and dispel reasonable suspicion of criminal activity. 392 U.S. 1, 21-22 (1968); see United States v. Jacobs, 715 F.2d 1343 (9th Cir.1983) (officer may make investigative stop of suspicious individual to maintain status quo while obtaining more information). Therefore, we conclude that the district court did not err in finding there was founded suspicion to stop Peinado.
 
 II
 SEARCH
 
 9
 Peinado also argues that even if there were founded suspicion for the initial stop, the trunk search was not based upon probable cause and therefore was unlawful. The district court rejected the Government's contention that the search was consensual, so probable cause was required. Whether a defendant voluntarily consented to a search depends upon the totality of circumstances and is a question of fact reviewed under the clearly erroneous standard. United States v. Kelley, 953 F.2d 562, 566 (9th Cir.1992).
 
 
 10
 After reviewing the record, we cannot conclude that the district court clearly erred in finding that the agent commanded Peinado to open the trunk, and therefore, that he did not consent to the search. Because Peinado did not consent to the search, we must consider whether Peinado's statement, "[t]here is marijuana," constituted probable cause for the agents' to search the trunk. See United States v. Dunn, 946 F.2d 615, 618-19 (9th Cir.) (officers may conduct warrantless search of automobile if they have probable cause), cert. denied, 112 S.Ct. 401 (1991). We hold that the statement did not provide probable cause for the search because both the statement and the marijuana were the fruit of an unlawful seizure.
 
 
 11
 The Fourth Amendment bars the use of any evidence obtained during an unlawful seizure, including verbal statements which constitute the fruit of that illegal seizure. Wong Sun v. United States, 371 U.S. 471, 485-86 (1963). Any evidence seized as a result of the illegally-obtained statements is also excluded under the Fourth Amendment. Id. at 487-88.
 
 
 12
 A person is seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." California v. Hodari D., 111 S.Ct. 1547, 1551 (1991) (internal quotations and citations omitted). We must determine whether a reasonable person in Peinado's situation would have believed he was free to leave the agents' presence when the command to open his trunk was given.
 
 
 13
 As Hodari D. points out, "[a]n arrest requires either physical force ... or, where that is absent, submission to the assertion of authority." Hodari D., 111 S.Ct. at 1551 (emphasis in original). Where a seizure is effected through a show of authority, as opposed to physical apprehension, the test is an objective one: "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Id.
 
 
 14
 We find that the agents' actions, coupled with Agent Grasky's command to open the trunk, would have conveyed to a reasonable person that he or she was not free to leave. Thus, Peinado was seized when he submitted to the agents' authority and made the statement in response to Agent Grasky's command. The Government improperly characterizes the agent's statement as a "request." Such a characterization is not supported by the record or the district court findings. It is also inaccurate to characterize the agents' conduct as noncoercive. At the hearing on the motion to suppress, the district court inquired specifically into what transpired as Peinado approached the parked vehicle. The district court found that the uniformed border patrol agents standing near their marked patrol car, commanded Peinado to open the trunk. Although we are parsing the language closely, we do not find the district court clearly erred in its determination that it was a "command" and not a "request."
 
 
 15
 When the agent issued the command, he was conveying authority such that a reasonable person would not have felt free to leave. If Peinado had followed the agent's command and had opened his trunk, the evidence would not be admissible because, as noted above, there was no consent to the search and the officers did not have probable cause. The fact that he yielded to authority by stating there was marijuana in the trunk, does not change the result.
 
 
 16
 The Government relies on our recent decision in United States v. Santamaria-Hernandez for its contention that the agents had probable cause to search Peinado's trunk. 968 F.2d 980 (9th Cir.1992). In Santamaria-Hernandez, this court held that founded suspicion may be based upon events occurring during a chase and up to the time of physical apprehension of a suspect who flees. Id. at 983. Santamaria-Hernandez implements the Supreme Court's recent ruling in Hodari D. that seizure does not occur if, in response to a show of authority, the subject does not yield. See Hodari D., 111 S.Ct. at 1550. In the event a suspect does not yield, seizure occurs when the police physically subdue the suspect. Id.
 
 
 17
 The Government's reliance on Hodari D. and Santamaria-Hernandez is misplaced. Both cases are distinguishable from the present case because the police obtained sufficient evidence to establish founded suspicion for subsequent seizures while they were chasing the defendants. As we stated in Santamaria-Hernandez, it was the defendant's flight that postponed the seizure until physical apprehension, 968 F.2d at 983, whereas in the present case, Peinado was not in flight at the time the officer commanded him to open the trunk. It is the fact of flight that distinguishes these cases and determines when seizure occurs. If a defendant flees upon a show of authority, he is not "seized" until he is physically apprehended and all evidence obtained up to that point may form the basis for probable cause. If, on the other hand, the defendant is not in flight, seizure occurs when a reasonable person would not believe he is free to leave as a result of an officer's show of authority.
 
 
 18
 Hodari D. and Santamaria-Hernandez dealt with situations in which the suspects had not yielded to the officers' authority. Thus, because Peinado was not in flight, the flight analysis used in Hodari D. and Santamaria-Hernandez does not apply to this case.
 
 
 19
 In holding that Peinado was seized when he submitted to the agents' show of authority, we are consistent with Hodari D.. Therefore, because the agents did not have probable cause to seize Peinado, the post-seizure statement was the fruit of the unlawful seizure and could not supply probable cause to search the trunk. The motion to suppress should have been granted.
 
 
 20
 The judgment of the district court is REVERSED and the matter REMANDED for further proceedings.
 
 SNEED, Circuit Judge, dissenting:
 
 21
 The majority holds that under the facts of this case the statement "Please, I want you to open your trunk," was an unlawful seizure of Peinado. In so holding, the majority relies on the principle that a seizure occurs "when a reasonably person would not believe he is free to leave as a result of an officer's show of authority." Majority, p. 7. Once the request was made, Peinado, under the majority's reasoning, could reasonably believe he was not free to leave. However, because probable cause had not ripened, it was an unlawful seizure.
 
 
 22
 Had Peinado remained stationary and declined to respond, the agents, at least initially, would have been powerless to proceed. An impasse would exist. Founded suspicion would not ripen into probable cause. Half formed fruit, not yet poisoned, would wither on the vine in the absence of some additional sustenance.
 
 
 23
 Could that sustenance consist of the impasse lengthened for three or four minutes in which Peinado shifted from one foot to the other while his eyes darted from the agents to the car, to the motel, to the heaven above? Or does the impasse itself, having its origin in the "command" become poisoned fruit after a lapse of a few minutes? I should have thought that the Peinado's manifested discomfiture would have nourished founded suspicion into probable cause to search the trunk. Apparently I am wrong.
 
 
 24
 That error leads me to believe that the half formed fruit of founded suspicion also could turn only into poisoned fruit had Peinado said, "There is nothing in the trunk." No doubt the officer would have responded somewhat in this fashion. "In that case you certainly should be willing to open the trunk." Had Peinado continued to refuse to open the trunk, I fail to see how an opening by the agents could yield anything but poisoned fruit under the reasoning of the majority. Seizure preceding probable cause to search would again yield only poisoned fruit.
 
 
 25
 It is difficult to foresee a different result had Peinado responded to the "request-command-seizure" by opening the trunk and revealing the marijuana. Surely this is little different from the blurted out revelation that happened in this case. Once again there would be revealed only "poisoned fruit."
 
 
 26
 Is there any way in which this "command" tree could have borne good, not poisoned, fruit? Perhaps the majority's reading of California v. Hodari D., 111 S.Ct. 1547 (1991), suggests a possibility. Had Peinado attempted to flee the scene, and shortly thereafter been apprehended by the agents, perhaps his acknowledgment of the presence of marijuana in the trunk would escape the blight of the prior improper seizure. It is difficult to be certain of that, however. Was not the second seizure the fruit of that "bad tree"? Can that tree ever bear anything other than poisoned fruit?
 
 
 27
 The majority's reasoning indicates that once the "command" was given any prosecution for possession of marijuana with intent to distribute was lost forever unless, perhaps, saved by open resistance to the command. Clearly this is a puzzling, counter-intuitive result. The majority's flaw lies in treating the "command" as a seizure. I concede readily that probable cause had not ripened prior to Peinado's revelation of the trunk's contents. However, the district court was right in finding that Peinado's revelation provided the probable cause and, implicitly, that no improper seizure had preceded it.
 
 
 28
 "Please I want you to open your trunk," can be, but need not be, characterized as a command. A "firm request" is a quite natural and reasonable characterization. Peinado's response followed immediately. No significant interval of time elapsed. The response far more resembled a spontaneous response than the extraction of inculpatory evidence from the person of one unlawfully seized in the street or on the highway.
 
 
 29
 The district court quite properly rejected the latter characterization. The majority can embrace it only by applying analytical magnification to what it perceives as a severely conflated sequence of events involving first an unlawful seizure and then a discovery of fruits of the poisonous seizure. Its technique resembles an effort to describe the "smile" on another's face as "a slight widening of the mouth with a bit of an uplift at its corners and accompanied by relatively smooth countenance in all other parts of the face save a few crinkles around the eyes."
 
 
 30
 Ordinary people do not describe smiles in that fashion. Nor are they likely to understand why Peinado's response did not provide probable cause to search. I share their difficulty.
 
 
 31
 I would affirm the judgment of the district court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3