21 F.3d 1117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond Keith KYGAR, aka Patrick Donald Robles, Defendant-Appellant.
 No. 93-50305.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 6, 1994.
Decided April 22, 1994.
 
 Before: BROWNING, PREGERSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Raymond Kygar appeals his conviction for possession of methamphetamine in violation of 21 U.S.C. Sec. 841(a)(1). He contends that the trial court erred by admitting evidence obtained from an illegal search and seizure of his automobile. We have jurisdiction under 28 U.S.C. Sec. 1291. We AFFIRM.
 
 BACKGROUND
 
 3
 On April 17, 1992, Appellant Raymond Kygar ("Kygar") was stopped by the California Highway Patrol ("CHP") while traveling on Interstate 15. CHP Officer Mary Oncale stopped Kygar pursuant to a request by DEA agent Roberts who indicated that Kygar was driving a white four door Chrysler sedan carrying a large quantity of methamphetamine. The DEA derived this information from a drug investigation in which a confidential informant alerted the DEA that Kygar was scheduled to pick up the methamphetamine at 1344 Ash Street, driving a white Chrysler sedan. The DEA agent, familiar with the address as a drug safe house, surveilled the home and witnessed Kygar drive away in the white Chrysler sedan.
 
 
 4
 After pulling Kygar over, Officer Oncale asked for his driver's license. Kygar provided a license bearing the name Patrick Donald Robles. This alerted Officer Oncale because the DEA had told the CHP dispatcher, who had then told the officer, to pull over the white Chrysler and that the suspect's name was Raymond Kygar. The car was registered to Kygar's mother, Maxine Kygar, and Officer Oncale knew that drug dealers often use cars registered to other people to prevent their forfeiture upon arrest. Officer Oncale ran computer searches on the names Robles and Kygar and discovered that Kygar was known to have loaned his car to drug dealers in the past.
 
 
 5
 After obtaining the described information, Officer Oncale asked Kygar to step out of the car. The officer then asked Kygar if she could search his car. He refused to consent. In response, Officer Oncale directed Kygar to sit in the back of the patrol car until a dog sniff team could examine the car.
 
 
 6
 San Diego Police Officer Sloane arrived shortly thereafter to conduct the dog sniff. His dog, Faustus, walked around the vehicle and alerted to the trunk area. This caused the officers to open the trunk to allow the dog to sniff inside. There were no drugs in the trunk, but, as Officer Sloane testified, he believed that the dog's erroneous alert to the trunk was caused by the wind blowing through the car. Sloane then closed the car doors and permitted the dog to sniff the interior of the vehicle. As a result, the dog found a box containing methamphetamine under the passenger side front seat.
 
 
 7
 After Kygar had been detained a total of 82 minutes (including 28 minutes in the patrol car), Officer Oncale arrested him and requested that Agent Roberts handle the evidence. Roberts asked Officer Oncale to transport Kygar to the DEA office because Oncale had the appropriate police vehicle to do so.
 
 
 8
 Kygar filed a motion to suppress the methamphetamine evidence, claiming it was seized in violation of the Fourth Amendment. The court denied the motion finding that the police had probable cause to believe that Kygar's vehicle was transporting narcotics. The trial judge concluded that probable cause stemmed from the corroboration of the informant's tip, the DEA's knowledge that the Ash Street house was a drug stash or safe house, and that Kygar's white Chrysler had been seen at previous drug surveillances in 1990 and 1992.
 
 
 9
 Kygar ultimately pled guilty to possession of methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1), conditioned upon an appeal of the district court's decision concerning denial of his suppression motion.
 
 ANALYSIS
 
 10
 Kygar argues that the initial stop of his vehicle violated the Fourth Amendment because there was no reasonable suspicion to justify the stop. We review de novo a trial court's finding of reasonable suspicion to stop based on specific, articulable facts. United States v. Carrillo, 902 F.2d 1405, 1410-11 (9th Cir.1990). However, the factual basis of the trial court's determination is reviewed for clear error. United States v. Espinosa, 827 F.2d 604, 608 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988).
 
 
 11
 Contrary to Kygar's argument, we find that Officer Oncale had probable cause to believe that Kygar was transporting narcotics. Probable cause exists where the facts and circumstances within the arresting officer's knowledge would lead a reasonably prudent person to believe that the suspect had committed, is committing, or is about to commit a crime. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 498 U.S. 825 (1990). Moreover, the experience and knowledge of the officer may be considered in the determination. Id. Finally, probable cause need not be based upon the knowledge of a single officer; rather, it may be drawn from the collective knowledge of the officers involved. Id.
 
 
 12
 The facts established by the trial court indicate that the DEA received information from a known, reliable informant. The informant specifically named Kygar, described his car, and specified the time and location that the transaction would occur. The DEA corroborated each of these details.
 
 
 13
 In addition, the DEA agent knew that the Ash Street house was used by a known drug dealer as a drug stash or safe house. The agent also had observed Kygar's car at previous drug surveillances in 1990 and 1992. Kygar's suspected participation in this drug trafficking was communicated to Officer Oncale.
 
 
 14
 Based on the collective knowledge of the officers involved, it is evident that a reasonably prudent person would conclude that Kygar was involved in a crime. We conclude that probable cause existed at the time Officer Oncale first stopped Kygar. Therefore, Kygar's contention that Officer Oncale lacked the reasonable suspicion necessary to stop his vehicle fails. The existence of probable cause justifies the initial stop, see United States v. Sokolow, 490 U.S. 1 (1989) (stating that reasonable suspicion is a lower standard than probable cause), the subsequent arrest, and the search of Kygar's automobile, Colorado v. Bannister, 449 U.S. 1 (1980) (stating that after probable cause exists at a traffic stop the police may conduct a warrantless search of the automobile for evidence of a crime).
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3